## LOUIS MARINO v. THE STATE.

No. 14949.   Delivered March 16, 1932.
Rehearing Denied May 4, 1932.

The opinion states the case.

*Earle Adams, Jr.* and *Berry & Berry,* all of Houston, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CALHOUN, JUDGE.—The conviction was for burglary; the punishment, two years confinement in the penitentiary.

The testimony in brief was as follows: That the Albert Milligan Paint Company's place of business was entered on June 12, 1931, the evi-

dence on the building showing that the entry was gained by forcing the back window bars off and entering through one of these rear windows. The evidence further shows that about $500 worth of merchandise was taken and about two-thirds of it was recovered.

The indictment charged the appellant, Louis Marino, Tiny Baltrip, and Harris Covington with the offense. The last named parties plead guilty and before final sentence testified on the separate trial of appellant to the facts of the burglary and also testified that they, together with the appellant in this case, committed the burglary as alleged. Appellant's confession to the burglary was also offered in evidence. The written confession offered in evidence was to the effect that about 4:30 or 5 o'clock Friday evening, June 12, 1931, Tiny Baltrip and Harris Covington and appellant got in his Ford coupe and rode around prospecting, as they called it, until about 7:30 or 8 o'clock, and then went to the Albert Milligan Paint Co. and parked their car in front of said company, got out of the car and jumped over the fence, pried a window up with a tire tool, then unscrewed the bars which were across the window and made the entry into the store that way. He further testified that Tiny Baltrip, who was on the inside, heard a noise and they all started to run and appellant got hung on the barb wire fence and cut his hand; that they ran to his car and circled the block in it and Tiny and Harris had left their hats in the place and went back to get them; that when they came back to the car he was feeling sick and told them that he couldn't help them load the stolen property on the truck; that he let them out of his car at Lamar Avenue with the intention of seeing them the next day and went to a Gulf station on the corner of Austin and McKinney Sts. and had his hands bandaged and medicine put on them; that he stayed there until about 12 o'clock and then went home and went to bed; that he didn't know who hauled the paint away from where they placed it or what became of it.

On the trial of the case, the appellant denied being present at the burglary and claimed that he had cut his hand at a ball game. He admitted that he had made a statement in regard to the matter and that he signed it, but claimed he only half read it before he did sign it. There was no exception to the charge of the court. No bills of exception were taken to the admission or rejection of any testimony. There are only two bills of exception in the record.

Bill of exception No. 1 complains of the action of the trial court in overruling appellant's first application for a continuance. Bill of exception No. 2 complains of the action of the trial court in overruling his motion for new trial. The state controverted the allegations of the motion for new trial and evidence thereon was heard by the court.

In his application for a continuance, the appellant alleged that he was not ready for trial because of the absence of Joe Savarino, Jr., a man named Jenkins, and Charlie Holzinger, all of whom were alleged to have resided

in the city of Houston but whose whereabouts at that time were unknown to the defendant. He alleged further that he was informed and believed that the witness Charlie Holzinger was temporarily absent from Harris county but would return in a few days; that all of said witnesses would testify that at the time of the commission of the offense alleged in the indictment that the defendant was not present at the time and place of the commission of said offense but was at another and different place entirely and did not and could not have committed the offense charged in the indictment. The motion itself admits that no process was ever issued for said witnesses and alleges as an excuse therefor that neither the defendant or his attorney knew of the setting of the case or that his case would be called for trial on this date. The indictment was returned into court on June 29, 1931. The appellant was arrested and gave bond on June 30, 1931, and had remained out on bond since that time. The trial was set for July 13, 1931, during which time no application was made for any witnesses by appellant. The motion for new trial was in part predicated on the refusal to continue the case.

The state filed a controversion of the defendant's motion for new trial which alleged that when the case was being tried the defendant used as a witness a man who was employed at the same place where the witness Joe Savarino, Jr., worked. The witness was called Jenkins and was one of the persons upon whose absence the appellant based his motion for a continuance. The evidence showed that the said Joe Savarino worked at a filling station at Austin and McKinney Sts. in the city of Houston and said filling station was only twelve blocks from the criminal courts building where this case was being tried and the defendant and his attorney could have secured process for the said Joe Savarino, Jr., while the trial was in progress and had him in court before the last of the witnesses testified. The state attached to their contest of the motion for new trial an affidavit of the said Joe Savarino, Jr., which in some respects qualified the affidavit which was attached to the motion for new trial. The evidence showed that on the morning of the day the case was set for trial, the defendant and others came into the district attorney's office seeking an agreement to get appellant off with a suspended sentence. On being informed that no agreement would be made as to a suspended sentence, appellant and his friends and relatives went upstairs to the court room and one of them telephoned for appellant's attorney, whom they had not gone to see since the examining trial except to get a bond to sign. After appellant's attorney came to court, no process was sought for the absent witnesses. After the court recessed at noon, the clerk asked appellant's attorney if he wanted him to issue for the witnesses and to try and get them in, and the attorney told appellant to remain and give the addresses. The clerk then issued the subpoenas, the contents of which are not shown. The witness Jenkins was subpoenaed and during his testimony gave the

address of Savarino. No further application for process was made during the trial.

There was an utter lack of diligence on the part of the appellant to secure the attendance of the witnesses. The burden is upon the accused to establish the exercise of dilignce in support of his application for a con· tinuance. Branch's P. C., sec. 314; Kelly v. State, 112 Texas Crim. Rep., 514, 17 S. W. (2d) 460; Houston v. State, 114 Texas Crim. Rep., 544, 26 S. W. (2d) 1066. The fact that the appellant's attorney may not have had actual notice of the setting of said case and therefore did not issue process for said witnesses is not sufficient in our opinion to establish the exercise of due and proper diligence. In the state of the record as presented, we feel constrained to hold that the learned trial judge was warranted in overruling the application and denying the motion for new trial based on the refusal to continue the case.

No reversible error appearing, the judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been exam· ined by the Judges of the Court of Criminal Appeals and approved by the Court.